<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LORETA CODELLA by her Power of Attorney, LISA PESCI, <br><br> LISA PESCI <br><br> and <br><br> CHRISTINA PESCI <br><br>     *Plaintiff*, <br><br> v. <br><br> STATE FARM FIRE & CASUALTY COMPANY, <br><br>     *Defendant*. | Civil Action No. 2:20-cv-14949 <br><br> **OPINION** <br><br> April 23, 2026 |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court upon Defendant State Farm Fire and Casualty Company's ("Defendant" or "State Farm") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF 100, "Motion" or "Mot."), filed on October 24, 2025. A statement of material facts not in dispute accompanied the Motion in accordance with Local Civil Rule 56.1. (ECF 100-11, "Statement of Facts" or "SF.") Plaintiff by and through her power of attorney, Lisa Pesci, opposed the Motion on November 17, 2025. (ECF 102, "Opposition" or "Opp.") State Farm filed a reply to the Opposition on November 24, 2025. (ECF 103, "Reply.") The Court has decided this Motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule

1

of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This action stems from a dispute between the insured ("Loreta Codella" or "Plaintiff") and their insurer State Farm. The parties disagree over the amount of the indemnity payment owed to Plaintiff for water damage losses that occurred at the property owned at 3 Cory Court, Parsippany, NJ 07054 ("the Property") in 2014 and 2019. (SAC ¶ 6, 11.)

It is undisputed that State Farm issued an insurance policy (the "Policy") to Plaintiff for the Property that was in effect on or about December 11, 2014, the approximate date of the first loss. (ECF 23, "Answer" ¶ 6.) State Farm had another insurance policy in effect on or around March 21, 2019, the time of the second loss. (*Id*. ¶ 11.) Both policies included a mold endorsement, which obligated State Farm to cover up to $50,000 for losses incurred by fungus or mold damage. (Mot. at 4.) The first loss resulted from a broken water supply line to the Property's kitchen sink, which spilled onto the kitchen floor. (Mot. at 1.) The second loss resulted from water leakage from the second-floor primary bathroom, which damaged the living room and basement below. (*Id*. at 1, 6.)

After the 2014 loss, Plaintiff hired a plumber to fix the supply line under the sink. (Opp. at 1.) Plaintiff contacted Defendant on January 21, 2015 to report the loss. (*See id*.; Mot. at 4.) In response to the call, Defendant sent Claim Specialist Leroy Featherman ("CS Featherman") to inspect the property. (Opp. at 2; Mot. at 4.) CS Featherman noticed "cupping and separating" of

---

[1] The facts and procedural history are drawn from the Second Amended Complaint (ECF 59, "SAC"), Defendant's Answer (ECF 23), Defendant's Motion for Summary Judgment (ECF 100), Plaintiff's Opposition (ECF 102), Defendant's Reply (ECF 103), and documents integral to or relied upon by the SAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

the hardwood floor in the kitchen. (*Id.*) Plaintiff alleges that CS Featherman "only inspected the wood floor and failed to consider" whether water flow from the sink damaged other areas of the Property. (Opp. at 2.) Based on CS Featherman's assessment of the damages, Plaintiff hired Cramers Carpet One Floor & Home ("Cramers"), a member of State Farm's Premier Service Program, on January 28, 2015 to restore the flooring, and submitted a quote to Defendant on February 2, 2015. (Mot. at 5; Opp. at 3.) It is undisputed that Cramers did not begin refurbishing the flooring until October 2015.[2] (Opp. at 3.) Cramers completed the work and submitted an invoice to Defendant in the amount of $9,012.34 that month. (*Id.*) State Farm paid the invoice and closed the 2014 loss claim in November 2015. (Mot. at 5.)

On April 3, 2019, State Farm Claim Specialist Michael Luger ("CS Luger") inspected the Property following the 2019 loss. (Mot. at 6.) At the time of the inspection, Plaintiff hired Klodian Belegu of Quality Air Care ("Klod") to address the leakage. (Opp. at 4.) Klod sent a repair estimate to State Farm on April 12, 2019 with a replacement cost value ("RCV") of $22,083 and actual cash value ("ACV") of $18,891.58. (Opp. at 5; Mot. at 6.) State Farm paid the ACV that same day, minus $1,000 as mandated by the Policy, for a total amount of $17,891.58. (*Id.*)

While repairing the 2019 loss, Klod discovered "extensive mold in the ductwork and HVAC unit in the attic, several first-floor rooms and the basement" resulting from the 2014 loss. (Opp. at 5.) Klod provided a "mold estimate" detailing the cost of repairs for the mold damage and asbestos removal. (Opp. at 5; Mot. at 7.) Defendant's Team Manager Henry Butryn ("TM Butryn") reviewed the estimate and determined the appropriate coverage for the work performed to be $58,800.81, with $31,598.85 going towards mold remediation. (Opp. at 6; Mot. at 7.) A subsequent

---

[2] In the Opposition, Plaintiff clarified that they delay in allowing Cramers to begin refurbishing the hardwood flooring in the kitchen was due to medical and family related issues. (Opp. at 3.)

3

inspection from TM Butryn on May 23, 2019 revealed additional mold damage caused by the 2014 loss. (Opp. at 6; Mot. at 7.) State Farm provided $18,491.05 to Plaintiff for repair work, representing the remaining balance for the $50,000 mold coverage limit under Plaintiff's 2014 policy. (Opp. at 6; Mot. at 8.)

While evaluating the 2019 loss, Klod determined the "emergency remediation estimate" from the leakage to be $29,416.04 and the "mold estimate" to be $52,266.86. (Mot. at 8; Opp. at 7.) TM Butryn adjusted the estimate down to $23,934.62 and $34,712.71, respectively, and State Farm issued a check to Plaintiff in the amount of $58,647.33. (*Id*.) On May 23, 2019, TM Butryn informed State Farm that he estimated the mold damage would be at or exceed the $50,000 mold coverage limit pursuant to Plaintiff's 2019 policy. State Farm subsequently sent Plaintiff a check for the remaining balance of the Policy, $15,287.29. (Opp. at 7; Mot. at 8.)

The parties were able to come to an agreement as to the amount owed to Plaintiff for the 2014 loss, and State Farm paid Plaintiff $52,458.48. (Opp. at 6; Mot. at 9.) A subsequent inspection of the damages from the 2014 loss increased the estimated ACV, and State Farm sent Plaintiff a check in the amount of $43,655.82 to cover the difference. (*Id*.) After a revision was made to the 2019 estimate, State Farm sent Plaintiff a check for $24,085.39, reflecting an increase in the ACV. (Opp. at 7.) Subsequently, Defendant altered the estimate for the 2019 loss and paid an additional $32,679.91 to reflect the new ACV. (Opp. at 8.) On June 24, 2019, Klod and TM Butryn inspected the Property again, and informed State Farm of "significant dollar differences to resolve this loss, somewhere in excess of $100,000 to $170,000." (Opp. at 8; Mot. at 10.) State Farm sent two letters to Plaintiff on June 26, 2019 demanding appraisal of both claims pursuant to Plaintiff's polices. (*Id*.) State Farm specified the appraisal would be limited to the scope of damages set forth in State Farm's final estimates for both claims. (Mot. at 14.)

Prior to the start of the appraisal process, the parties went through several more inspections. State Farm's claim specialist and Plaintiff's public adjuster determined an increase in ACV for the 2014 loss in the amount of $26,046.18 and an amount of $11,729.16 for the 2019 loss. (Opp. at 9; Mot. at 11.) During this time, the parties disagreed about whether sheathing damage on the exterior wall near the kitchen sink and water damage to the first-floor bathroom's vanity were caused by the covered losses. (Opp. at 9; Mot. at 12.)

In March 2020, Plaintiff accepted State Farm's demand for appraisal. (Mot. at 14.) In 2022, an umpire determined an RCV in the amount of $200,869.86 for the 2014 loss and $99,959.30 for the 2019 loss. (Opp. at 10.) State Farm paid Plaintiff a check to cover the difference between the final estimates paid previously and the umpire's award. (Mot. at 14-15.) However, several of Plaintiff's claims were not resolved through the appraisal process, including damages to the first-floor bathroom, 2 HVAC systems, basement doors, siding, and "code upgrades and incurred costs for electrical/plumbing." (Opp. at 10-11.) The parties disagree as to whether these damages are within the scope of the appraisal process, creating the basis for the breach of contract claim. The parties also dispute whether the amount paid by State Farm fully covers Plaintiff's cost of repairs in total and Plaintiff's personal property claims. (Mot. at 16.) Additionally, Plaintiff alleges State Farm acted in bad faith for its coverage decisions on the grounds they are not "fairly debatable." (Opp. at 34.)

Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Morris County, Docket No. MRS-L-1909-20 on September 24, 2020. (ECF 1, Notice of Removal "Notice" ¶ 1.) State Farm removed the action to federal court on October 25, 2020 pursuant to 28 U.S.C. § 1441, with diversity jurisdiction being proper under 28 U.S.C. § 1332. (*Id*.) Plaintiff filed an amended complaint on April 29, 2021. (ECF 21.) Defendants answered the amended complaint

5

on May 14, 2021. (ECF 23.) Plaintiff filed a second amended complaint on July 21, 2023. (ECF 59.) Defendants moved for summary judgment on October 24, 2025. (*See generally* Mot.) Plaintiff opposed the Motion on November 17, 2025. (*See generally* Opp.) Defendants replied on November 24, 2025. (*See generally* Reply.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

## III.    ANALYSIS

In Point I of its Motion, State Farm argues that Plaintiff has no standing to prosecute this action. (Mot. at 21.) State Farm argues the purported power of attorney filed as Exhibit J to the Declaration of Michael Casper, Esq. (ECF 102-13) is invalid and gives Ms. Pesci no authority to file this suit on behalf of Ms. Codella. (*Id.*; Reply at 2.) Plaintiffs argue the power of attorney has been properly executed and standing is proper. (Opp. at 19-21.) The Court agrees with State Farm.

The doctrine of standing is a "threshold justiciability determination [of] whether the litigant is entitled to initiate and maintain an action before a court." *In re Six Month Extension of N.J.A.C. 5:91-1 et seq.*, 855 A.2d 582, 596 (App. Div. 2004). "Standing, however is not automatic, and a litigant usually has no standing to assert the rights of a third party." *Id*. A power of attorney is an

7

instrument by which an individual may file an action on behalf of a third party or principal. N.J. Stat. Ann § 46:2B-8.2.[3]

To have standing to sue on behalf of a principal, the power of attorney must expressly grant that right to the agent. *Palisades Collection, LLC v. Brown*, No. A-2235-08T3, 2010 WL 5104824, at *6 (N.J. Super. Ct. App. Div. Dec. 15, 2010) (denying the authority of a purported power of attorney that is broadly worded and does not expressly grant the authority the attorney-in-fact sought to exercise). The instrument must also meet the statutory requirements of N.J. Stat. Ann § 46:14-2. N.J. Stat. Ann. § 46:2B-8.9 ("A power of attorney *must* be in writing, duly signed, and acknowledged in the manner set forth in R.S. 46:14-2.1.") (emphasis added). A power of attorney that does not satisfy the requirements of § 46:14-2.1 is invalid and confers no authority to the purported attorney-in-fact. *See Am. Orthopedic & Sports Medicine v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454, n 9. (3d Cir. 2018) (holding a power of attorney to be deficient under state law because it "failed the requirement . . . that there be at least one witness[,] *[s]ee* N.J. Stat. Ann. §§ 46:2B-8.9, 46:14-2.1(b)").

Here, Plaintiff argues they have standing to sue in this matter because a power of attorney was allegedly signed by both Ms. Codella and Ms. Pesci, and they appeared in front of a qualified officer. (Opp. at 20.) They do not contend, however, a subscribing witness appeared before that officer in accordance with § 46:14-2.1(b). Instead, Plaintiff engages in a strained statutory interpretation analysis arguing the power of attorney is valid because § 46:2B-8.9 states the instrument must be *acknowledged* in accordance with § 46:14-2.1, and the only provisions of that

---

[3] N.J. Stat. Ann. § 46:2B-8.2(a) requires a power of attorney to specifically state the actions the attorney-in-fact may perform on behalf of the principal. "A power of attorney is a written instrument by which an individual known as the principal authorizes another individual . . . known as the attorney-in-fact *to perform specified acts* on behalf of the principal as the principal's agent." § 46:2B-8.2(a) (emphasis added).

section that contain the words "acknowledge" or "acknowledgement" are in subsections (a) and (c). (*Id.*)

The Court rejects this interpretation of the statutes because the plain meaning of the laws are clear. In New Jersey, a general power of attorney must be acknowledged and proved in the same fashion as all other general deeds and instruments subject to the requirements of § 46:14-2.1. This holding is supported by the fact that this issue has been determined by this Court in other cases, specifically in regards to standing conferred by power of attorney instruments. *See Kayal v. Cigna Health and Life Ins. Co.*, No. 23-03808, 2024 WL 2954283, at *3 (D.N.J. June 12, 2024) ("Plaintiff's standing argument fails because he has not provided the Court with evidence that [the] power of attorney is sufficient to confer standing under New Jersey law."); *Emami v. Aetna Life Ins. Co.*, No. 23-03878, 2024 WL 1715288, at *3 (D.N.J. Apr. 22, 2024) (holding Plaintiff's failure to establish the power of attorney's compliance with New Jersey law was detrimental to his ability to confer standing because "the power of attorney lacks a notarized signature of an attesting witness, which is required to 'prove' the document under N.J. Stat. Ann. § 46:14-2.1(b)"); *Nair v. Aetna Life Ins. Co.*, No. 24-09588, 2025 WL 2170601, at *6 (D.N.J. July 31, 2025) ("[C]ourts have found POAs to be deficient for purposes of ERISA standing where the maker's signature was notarized, but the witness's was not."). Therefore, the Court must grant summary judgment for Defendants because Ms. Pesci does not have the authority to assert the rights of Ms. Codella. Ms. Pesci cannot file suit in her own right because she is not in contractual privity with State Farm. (Mot. at 21.)

State Farm also argues that the power of attorney is defective because the document does not grant Ms. Pesci the specific authority to file suit. (Reply at 4.) State Farm argues the conveyance of authority was simply so Ms. Pesci could make decisions relating to "the

9

maintenance and repair of the Property." (Mot. at 22.) Plaintiff contends the language "[a]ny and all decisions made with regard to said property can and should be made by Lisa" inherently includes the ability to file suit, especially when she is given the express authority to sign off on "repair work" and the nature of this litigation is to secure insurance payments to repair damages at the Property. (Opp. at 21.) Plaintiff also highlights the fact that Ms. Codella has never contested the authority of Ms. Pesci to file suit on her behalf in her two-hour deposition or at any point during this five-year litigation. (*Id.*)

The Court determines that it need not resolve the issue of whether filing suit is an inherent act specified by the document. Even if it is, the lack of a subscribing witness's signature makes the defects in the document's execution fatal, and it is invalid for the purposes of asserting standing in this Court.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc:   Stacey D. Adams, U.S.M.J.
      Parties